UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDULKADIR HASSAN and FURHIYA ISMAIL, a married couple, d/b/a KOSHIN FOOD SERVICES,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

CASE NO. C05-1066C

ORDER

This matter comes before the Court on Plaintiffs' Motion to Compel written discovery (Dkt. No. 8) ("Pls.' Mot."), Defendant's Opposition thereto (Dkt. No. 10) ("Def.'s Opp'n"), and Plaintiffs' Reply (Dkt. No. 11) ("Pls.' Reply").  The Court has considered the briefs and declarations submitted by the parties and determined that oral argument is not necessary.  For the reasons discussed below, the Court GRANTS Plaintiffs' motion to compel.

I.  **BACKGROUND**

The underlying lawsuit in this matter is a request for judicial review and reversal of an administrative decision of the Food and Nutrition Service ("FNS") permanently disqualifying Plaintiffs Abdulkadir Hassan and Furhiya Ismail, owners of a Somali grocery store, from participation in the Food

ORDER – 1

Stamp Program ("FSP"). The decision was based on evidence allegedly demonstrating that Plaintiffs' food stamps transactions "establish[ed] a clear and repetitive pattern of unusual, irregular, and/or inexplicable FSP activity" (Pls.' Compl. (Dkt. No. 1) ¶ 10) (alteration in original), which suggested that Plaintiffs had unlawfully trafficked[1] food stamps in violation of the provisions of the Food Stamp Act ("FSA"), 7 U.S.C. § 2011 *et seq.*[2] Plaintiffs' request for an administrative appeal was denied on May 10, 2005.

The matter presently before the Court is a discovery dispute involving the disclosure of portions of Defendant's evidence that Plaintiffs engaged in illegal trafficking of food stamps. Plaintiffs seek an Order compelling Defendant's responses to three Interrogatories and four Requests for Production of Documents regarding (1) the identities of the food stamp recipients or households that participated in the allegedly unlawful transactions with Plaintiffs[3] and (2) the standards that Defendant used to determine which transactions might be suspicious or constitute evidence of trafficking.[4] In addition, because the discovery deadline in the present case is March 24, 2006, Plaintiffs have also requested a twenty-day leave period to depose up to four of Defendant's employees with knowledge of the subject matter of this dispute. Defendant does not dispute this deposition request, but it does object to producing the information at issue in this motion. The parties have satisfied the meet-and-confer requirement of Federal Rule of Civil Procedure 37(a)(2).

**II.    ANALYSIS**

During the course of the present dispute, Defendant has justified its refusal to provide the

---

[1] Food stamp trafficking is defined as "the buying or selling of coupons . . . or other benefit instruments for cash or consideration other than eligible food." 7 C.F.R. § 271.2.

[2] Food stamp transactions are now commonly referred to as an Electronic Benefit Transfer, or "EBT" transactions. (Pls.' Compl. (Dkt. No. 1) 3.)

[3] This information is sought by Interrogatories 5 and 11 and Requests for Production 9 and 10.

[4] This information is sought by Interrogatory 10 and Requests for Production 7 and 11.

ORDER – 2

requested discovery on various grounds.  First, with respect to information pertaining to the *identity* of individuals who allegedly engaged in illegal trafficking with Plaintiffs, Defendant resisted production of this information by arguing that producing the identities of individuals alleged to have trafficked with Plaintiffs would "constitute a clearly unwarranted invasion of privacy."  (Pls.' Mot., Greene Decl. 23.)  Defendant also has relied on a confidentiality provision in the FSA, which places limits on disclosure of information relating to the FSP.  In addition, with respect to information regarding Defendant's *investigative techniques*, Defendant argues such information constitutes privileged information compiled for law enforcement purposes.  (*See, e.g.*, *id.* at 25.)  The Court will address Defendant's privacy argument before undertaking the more complicated issue of whether either the FSA's confidentiality provisions or the general governmental enforcement privilege apply in the present case.

      A.      **Privacy Act Protection**

The Court finds that general concerns of privacy are insufficient to justify the refusal to answer Plaintiffs' discovery requests.  The scope of discovery in federal court is very broad.  Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1).  While the rules do permit parties to be excused from certain discovery on the basis of "annoyance, embarrassment, oppression, or undue burden or expense," there is no generic "privacy" objection. FED. R. CIV. P. 26(c).  Even where information is subject to the protections of the Privacy Act of 1974, "a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard of Rule 26(b)(1) of the [Federal Rules of Civil Procedure]." *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987).  Moreover, information falling under the ambit of the Privacy Act may be disclosed "pursuant to the order of a court of competent jurisdiction."[5] *Id.* at 888.  Thus, as long as the information sought is relevant and

---

[5] *Laxalt* did note that, while information protected by the Privacy Act is not immune from legal process, a court may have a heightened responsibility to utilize devices such as protective orders and *in*

ORDER – 3

otherwise discoverable, Defendant's "privacy" objection cannot defeat Plaintiffs' requests.

Defendant's argument that the information sought is not relevant is unpersuasive.  As Defendant correctly notes, reliance on evidence obtained through a transaction report under an EBT transfer system is explicitly recognized under 7 U.S.C. § 2021(a).  Defendant has openly stated that it relied on EBT transactions in developing its case against Plaintiffs for illegal trafficking.  Accordingly, because this is a suit that challenges the validity of a finding that Plaintiffs engaged in unlawful trafficking that was based on such evidence, the Court finds that the identities of food stamp recipients alleged to have trafficked with Plaintiffs are relevant under Rule 26(b)(1), and therefore discoverable.

### B.    The FSA's Confidentiality Provision

Defendant also has justified its refusal to provide responses to Plaintiffs' discovery requests by relying on the FSA's confidentiality provision.[6]  This provision requires participating states to provide "safeguards which limit the use or disclosure of information obtained from applicant households to persons directly connected with the administration or enforcement of" the provisions of the FSA or other federally assisted state public welfare programs.  7 U.S.C. § 2020(e)(8).[7]  Defendant argues that this

---

*camera* inspection to give effect to the Federal Rules' liberal discovery principles "without threatening the interests protected [by the Privacy Act]." *Id.* at 889.  However, Defendant has made no arguments in its Opposition that this Court should take any such steps.

[6] Although Defendant did not specifically raise this issue in its Opposition, it nevertheless appears that Defendant did, prior to the filing of the present motion, indicate to Plaintiffs that refusal to provide the requested discovery was justified by this provision.  (Pls.' Mot. 4.)  Because Plaintiffs have responded to this argument in their Motion to Compel, the Court will address this issue.

[7] The FSA provides for several exceptions to the general bar on disclosure, including disclosure to (1) the Comptroller General of the United Stats for audit and examination; (2) agencies of the federal government for purposes of collecting the amount of an over-issuance of coupons; and (3) local, state or federal law enforcement officials who are either investigating an alleged violation of law or regulation pertaining to the federal food stamp program or requesting disclosure of information on a fugitive from justice.  *Id.* § 2020(e)(8)(A)–(D).  In addition, federal regulations pertaining to the administration of the FSA provide that any information acquired under § 2020(a) may be disclosed to (1) persons directly connected with the administration and enforcement of the provisions of the FSA and its regulations; (2) employees of the Comptroller General's Office; and (3) local, state or federal law enforcement officials

ORDER – 4

provision provides a privilege objection to Plaintiffs' discovery requests.

The task for this Court is to determine to what extent, if any, the FSA confidentiality provision creates a federal privilege. It is well-settled that a privilege may be created by statute. *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982). However, a statute granting a privilege is to be strictly construed so as "to avoid a construction that would suppress otherwise competent evidence." *Id.* Moreover, statutes prohibiting general disclosure of information do not bar judicial discovery absent an express prohibition against such disclosure. *Zambrano v. INS*, 972 F.2d 1122, 1125 (9th Cir. 1992) (citing *St. Regis Paper Co. v. United States*, 368 U.S. 208, 217–18 (1961)), *rev'd on other grounds*, 509 U.S. 918 (1993). The U.S. Supreme Court has recognized that "when Congress has intended [that information] not to be subject to compulsory process it has said so." *St. Regis Paper*, 368 U.S. at 218. In addition, the Ninth Circuit has identified "three forms of confidentiality provisions which have been utilized by Congress." *Zambrano*, 972 F.2d at 1125. First, a statute may expressly bar disclosure in legal proceedings. *Id.* Second, a statute may expressly allow for disclosure in legal proceedings. *Id.* Third, a statute may be silent on the issue of disclosure during legal proceedings. *Id.*

The FSA's confidentiality provision falls into the third category of those listed in *Zambrano*. The FSA makes no explicit reference to judicial disclosure either in the language of the statute itself or the accompanying regulations. Defendant has not cited, and the Court has been unable to locate any cases holding that § 2020(e)(8) should be construed to *create* a discovery privilege. In contrast, several courts—in situations similar to the present case—have determined that statutes that do not specifically address disclosure in legal proceedings should *not* be read as prohibiting such disclosure. *See, e.g., Zambrano*, 972 F.2d 111 (affirming district court order requiring INS to disclose names of individuals whose applications for legalization were denied based on illegal regulations despite confidentiality provision in the Immigration Reform and Control Act ("IRCA")); *see also In re Nelson*, 873 F.2d 1396

---

only for the purpose of investigating an alleged violation of the FSA or any governing regulation. 7 C.F.R. § 272.1(c)(1).

ORDER – 5

(11th Cir. 1989) (finding that IRCA's confidentiality provisions with respect to Special Agricultural Workers applications did not bar judicial disclosure). In accordance with the Court's responsibility to strictly construe statutes purporting to create new privileges, and because the language of the FSA's confidentiality provision does not specifically prohibit judicial disclosure, the Court finds that § 2020(e)(8) does not create any privilege barring discovery.

### C. Law Enforcement Privilege

In its responses to Plaintiffs' discovery requests regarding the policies and procedures relating to the FNS's analysis of Plaintiffs' EBT transactions, Defendant asserted that information relating to "investigative techniques constitutes privileged information compiled for law enforcement purposes, the disclosure of which could reasonably be expected to interfere with enforcement proceedings." (Pls.' Mot., Greene Decl. 25.) Courts have recognized the existence of a law enforcement investigatory privilege, both under common-law principles and by statutory creation. *See, e.g., F.B.I. v. Abramson*, 456 U.S. 615, 622–23 (1982) (discussing an exemption to the Freedom of Information Act that prevents disclosure of investigatory materials that may be used in a law enforcement action). The assertion of an investigatory/law enforcement privilege involves a two-step process. First, "a requested document must be shown to have been an investigatory record 'compiled for law enforcement purposes.'" *Id.* at 622. Second, the government agency "must demonstrate that release of the material would have one of . . . six [specified results]"[8] *Id.*

---

[8] These results are described in exemption 7 of the Freedom of Information Act, 5 U.S.C. § 552(b)(7). This exemption protects

> investigatory records compiled for law enforcement purposes but only to the extent that the production of such records would (a) interfere with enforcement proceedings, (b) deprive a person of a right to a fair trial or an impartial adjudication, (c) constitute an unwarranted invasion of personal privacy, (d) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (e) disclose investigative techniques and procedures, or (f)

ORDER – 6

Although Defendant did generally invoke the law enforcement privilege, Defendant appears to have abandoned this position in its Opposition, having provided no substantive argument or citation to legal authority on this matter. Even if the requested documents were compiled for law enforcement purposes, Defendant has done no more than provide bare assertions in its answers to Plaintiffs' discovery requests that are insufficient to show that disclosure of the requested information would interfere with enforcement proceedings, disclose investigate techniques and procedures, or do anything else specified in § 552(b)(7). Accordingly, the Court finds that Defendant cannot invoke this privilege as a shield to discovery in this matter.

As a final matter, the Court notes that it is troubled by the fact that, in its Opposition, Defendant appears to claim that it is not in possession of either the EBT transactions containing the identities of individuals who allegedly trafficked with Plaintiffs or any documents regarding the policies and procedures related to the FNS investigative techniques. (Def.'s Opp'n 2.) If these assertions are true, Defendant should have clearly conveyed this information in its initial discovery responses. Defendant's assertions are further troubling in light of the fact that Defendant has, on several occasions, indicated that it does have *access* to this information. (Pls.' Reply 3.) That Defendant has access to this information also should have been disclosed in its discovery responses. Defendant cannot now defeat Plaintiffs' motion by relying on argumentative assertions in its Opposition that should have been raised in its initial responses to discovery. Defendant is advised to ensure that its discovery responses adhere to the dictates of Federal Rules of Civil Procedure 26(g) and 37(c).

### III.  CONCLUSION

For the reasons set forth in this Order, Plaintiffs' motion to compel discovery is GRANTED as follows:

---

endanger the life or physical safety of law enforcement personnel.

*Id.*

ORDER – 7

(1) To the extent Defendant is in possession of or has reasonable access to the requested discovery, Defendant is hereby ORDERED to respond fully and completely to Interrogatories 5, 10, and 11, and to Requests for Production 7, 9, 10, and 11, no later than 10 days from the date of this Order.

(2) Plaintiffs' request for leave to conduct up to four depositions of Defendant's employees is hereby GRANTED. These additional depositions are to be completed no later than April 7, 2006.

SO ORDERED this 15th day of March, 2006.

_____
UNITED STATES DISTRICT JUDGE

ORDER – 8